IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GEORGE BRIDGETTE,

    Plaintiff,                       No. CIV S-04-0436 DFL PAN P

    vs.

D. RUNNELS, et al.,

    Defendants.              <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner seeking relief pursuant to 42 U.S.C. § 1983. He claims defendants Sandham and Felker were deliberately indifferent to his arthritis by refusing to transfer him to a warmer climate as recommended by a physician. On November 16, 2005, defendants moved for summary judgment. On February 23, 2006, plaintiff opposed.

        SUMMARY JUDGMENT STANDARDS UNDER RULE 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

        Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions

1

on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

   If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On December 2, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## SUBSTANTIVE LAW

Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). A prison official is

1 deliberately indifferent when he knows of and disregards a risk of injury or harm that "is not one
2 that today's society chooses to tolerate." See Helling v. McKinney, 509 U.S. 25, 35 (1993);
3 Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official must know of facts from which he
4 could infer a serious risk of harm, draw the inference but fail to take reasonable measures to
5 protect against the harm. Farmer, 511 U.S. at 837. Such indifference may "appear when prison
6 officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the
7 way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390,
8 394 (9th Cir. 1988). "[A] complaint that a physician has been negligent in diagnosing or treating
9 a medical condition does not state a valid claim of medical mistreatment under the Eighth
10 Amendment." Gamble, 429 U.S. at 106. December 14, 2005

11      A showing of a difference of opinions regarding the need to pursue one course of
12 treatment over another is insufficient as a matter of law to establish deliberate indifference.
13 Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996). Therefore, "[w]here a defendant has based his
14 actions on a medical judgment that either of two alternative courses of treatment would be
15 medically acceptable under the circumstances, plaintiff has failed to show deliberate indifference,
16 as a matter of law." Jackson, 90 F.3d at 332. To survive summary judgment in such a case, a
17 plaintiff must adduce evidence demonstrating a genuine dispute about whether defendants knew
18 plaintiff's treatment was medically unacceptable under the circumstances but permitted the
19 physicians to pursue it in conscious disregard of an excessive risk to plaintiff's health. Id.

20                                  UNDISPUTED FACTS

21       At all times relevant to this action plaintiff was confined at High Desert State
22 Prison. Defendant Felker was the Associate Warden and defendant Sandham was the Chief
23 Medical Officer at High Desert State Prison.

24       Plaintiff has severe degenerative arthritis in his knees and suffers pain therefrom.
25 He stands 6'1" and, at all times relevant to this action, weighed around 260 pounds.

26       On May 16, 2002, plaintiff complained of left knee pain to Dr. Weaver and

4

1  requested that he be transferred to the California Medical Facility (CMF).  Dr. Weaver found that
2  plaintiff's left knee was tender but stable and that there was no reason to transfer him to CMF.  He
3  prescribed Tylenol and referred plaintiff to the prison's orthopedic specialist.
4         On March 11, 2003, plaintiff saw another physician, Dr. Wescott, who found
5  plaintiff, at 6"1' and 262 pounds, was overweight and walked with a limp.  Plaintiff complained of
6  knee pain and explained that anti-inflammatory medications upset his stomach but Tylenol
7  helped.  Plaintiff requested, and Dr. Wescott recommended, that plaintiff be transferred to a
8  warmer climate to alleviate the pain.  Dr. Wescott  also prescribed Tylenol.
9         On August 12, 2003, Dr. Dickenson determined that transfer to a warmer climate
10 was not medically indicated.  September 5, 2003, plaintiff complained to Dr. Dickenson of pain
11 and requested that he be transferred to a warmer climate.  Dr. Dickenson found that plaintiff had
12 normal range of movement in his knees and took Motrin and Tylenol for pain.
13        On September 11, 2003, the prison's orthopedic specialist, Dr. Rholfing, examined
14 plaintiff and found plaintiff's knees were tender but stable and had full range of movement.
15 Plaintiff reported that wrapping his knees in Ace bandages alleviated some pain.  Dr. Rholfing
16 agreed that the winter cold would aggravate plaintiff's pain but transfer was not medically
17 necessary and ordered plaintiff boots with special soles to alleviate pain while walking.
18        On October 2, 2003, Dr. Dickenson examined plaintiff again, found plaintiff
19 walked easily and had good range of movement.   He explained that plaintiff's condition was
20 chronic and so some days plaintiff would experience more pain than others.
21        On November 16, 2003, Dr. Mangis determined plaintiff was obese, had an uneven
22 gait, full range of motion in his knees and no inflammation.  He prescribed Ibuprofin,
23 recommended thermal underwear and advised plaintiff to put heat on his legs.
24        On November 19, 2003, plaintiff complained of increased knee pain because of the
25 cold and of difficulty walking in the snow and ice.  Dr. Rholfing found that plaintiff walked with a
26 limp and that his knees were swollen, but they were stable and had nearly full range of

1  movement.  Dr. Rholfing explained he could not consider recommending a transfer, but stated that
2  knee replacement surgery could help.
3          On December 18, 2003, plaintiff was examined at the Reno Orthopedic Clinic
4  where an orthopedic specialist found that plaintiff had full range of movement with tenderness
5  and swelling in both knees.  X-rays showed significant degenerative joint disease and nearly bone-
6  on-bone arthritis in plaintiff's right knee.  Plaintiff received cortisone injections in both knees.  A
7  physician's assistant recommended that plaintiff stay out of the cold.

                                      ANLAYSIS

9          Defendants Felker and Sandham assert there is no genuine issue about whether
10 they were deliberately indifferent.  Plaintiff asserts there is such an issue because not only did
11 defendants refuse to transfer him; but also, plaintiff never received knee braces, prison doctors
12 never advised him to lose weight and in any event plaintiff's weight does not aggravate his knee
13 pain.
14         Defendants submit records showing that on March 11, 2003, Dr. Wescott
15 recommended that plaintiff lose 60 pounds and referred plaintiff to a dietician.  Declaration of
16 Stanzler, Exhibit B.  On March 24, 2003, a dietician advised plaintiff how to lose weight but
17 observed that weight loss did not seem to concern plaintiff, even though he weighed 262 pounds.
18 Declaration of Sanzler, Exhibit B.  On August 12, 2003, Dr. Dickenson determined that the best
19 way to ease plaintiff's knee pain was for plaintiff to lose weight.  Declaration of Stanzler, Exhibit
20 C.  On November 16, 2003, Dr. Mangis advised plaintiff to lose weight.  Declaration of Stanzler,
21 Exhibit G.
22         Defendants submit records showing that on October 2, 2003, Dr. Dickenson
23 observed plaintiff with braces on both knees and on December 18, 2003, plaintiff received
24 neoprene sleeves for both knees.  Declaration of Stanzler, Exhibits F, I..
25         On November 19, 2003, Dr. Rohlfing considered limited surgery but recommended
26 complete knee replacement surgery.  Declaration of Stanzler, Exhibit H.

While physicians disagreed about whether a warmer climate significantly would help plaintiff, defendants adduce evidence that physicians prescribed pain-killers, knee-braces and sleeves, administered cortisone shots, recommended weight-loss and after x-rays revealed the severity of plaintiff's condition, decided knee-replacement surgery was the best treatment.

Plaintiff adduces no evidence that defendants Felker or Sandham interfered with plaintiff's treatment or that they knew of facts from which they could infer that the treatment plaintiff received was medically unacceptable vis-a-vis transfer to a warmer climate and drew the inference, yet refused to take reasonable measures to transfer him

The court finds there is no genuine dispute about whether defendants Felker and Sandham were deliberately indifferent to plaintiff's serious medical needs.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' November 16, 2005, motion for summary judgment be granted and that judgment be entered in their favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 30 days after being served with these findings and recommendations, plaintiff may file written objections.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 4, 2006.

UNITED STATES MAGISTRATE JUDGE

\004
\brid0436.57